ANNA CINDRICH, Appellant, v. INDIANA TRAVELERS ASSURANCE COM-PANY.—No. 40375.—204 S. W. (2d) 765.

Division One, October 13, 1947.

*R. C. Southall* for appellant.

*Henry I. Eager, Blackmar, Newkirk, Eager, Swanson & Midgley* for respondent; *Royse & Travis* of counsel.

██ BRADLEY, C.—May 6, 1930, and June 19, 1931, the American Benefit Life Association, an Indiana assessment company, issued a $1,000 life insurance policy to Tom Cindrich, a resident of Kansas City, Missouri. Plaintiff (appellant), now the widow of the insured, was named beneficiary in these policies. The issuing company had financial troubles and on May 31, 1934, the defendant (respondent), also an Indiana company, reinsured both policies, and on June 1, 1934, defendant issued its certificates of reinsurance which were forwarded by mail to the insured.

██ The insured died December 10, 1939, while the policies were in force; defendant denied liability and plaintiff filed suit in Kansas City against defendant to recover on the policies. Service was had by serving process upon the superintendent of insurance. The service on motion was quashed and the cause dismissed on the theory that service was not authorized under our statute. Plaintiff appealed to the Kansas City Court of Appeals. That court transferred the cause to the supreme court because a question of due process is involved. See Cindrich v. Indiana Travelers Assur. Co. (Mo. App.), 200 S. W. (2d) 595. And the transfer was proper. See Wooster v. Trimont Mfg. Co., 356 Mo. 682, 203 S. W. (2d) 411.

██ At the time the policies were issued the issuing company, American Benefit Association, was authorized to do business in this state and had complied with what is now Sec. 6005, R. S. 1939, Mo. R. S. A., Sec. 6005, as to service of process upon the superintendent of insurance. The insured was a resident of this state at the time applications for the policies were made; the applications were taken in this state (Kansas City) and the policies were delivered in this state and did not become in effect until delivered, and the policies are, therefore, Missouri contracts. Adams v. Continental Life Ins. Co., 340 Mo. 417, 101 S. W. (2d) 75, l. c. 83; 11 Am. Jur., Secs. 100 and 107, pp. 387 and 390. But the contract of reinsurance by respondent was executed in Indiana. Defendant gave notice to the insured by mail as to when premiums were due and insured remitted by mail.

██ Sec. 6005, referred to supra, provides: "No insurance company or association not incorporated or organized under the laws of this state shall directly or indirectly issue policies, take risks, or transact business in this state, until it shall have first executed an irrevocable power of attorney in writing, appointing and authorizing the superintendent of insurance of this state, to acknowledge or receive service of all lawful process, for and on behalf of such company, in any action against said company, instituted in any court of

this state, or in any court of the United States in this state, and consenting that service upon the superintendent shall be deemed personal service upon the company. . . ."

Sec. 6008, R. S. 1939, Mo. R. S. A., Sec. 6008, provides: "Any insurance company or association not incorporated or authorized under the laws of this state, which shall directly or indirectly issue policies, take risks or transact business in this state, failing or neglecting to file a written power of attorney as prescribed in section 6005, shall be deemed to have appointed the superintendent of insurance of this state, its true and lawful attorney for service of process in any action or proceeding growing ▮▮▮ out of such business or any such policies and process served upon the superintendent of insurance or upon any person within this state who shall solicit insurance on behalf of any such company, or make any contract of insurance, or collect or receive any premium for insurance, or who adjusts or settles a loss, or pays the same, for such company, or in any manner aids or assists in doing either, shall be valid and legal, and of the same force and effect as personal service on said company. . . ."

The certificates of reinsurance issued by defendant are identical except as to the number of the policy. The certificate for the policy first issued, so far as material, follows: "Indiana Travelers Assurance Company, Indianapolis, Indiana, does hereby reinsure Tom Cindrich, under and by virtue of a certain policy No. 29194, issued by American Benefit Life Association, Indianapolis, Indiana, to the above named insured; and assumes the obligations which said American Benefit Life Association would have been required to fulfill to the said insured under said policy, which is assumed and reinsured hereby, under a contract of reinsurance made and entered into between said American Benefit Life Association, and this company, and effective 12:00 midnight, May 31, 1934."

Plaintiff contends that defendant transacted business in this state. It will be noted that Sec. 6008 says that if defendant directly or indirectly issued policies in this state, or took risks in this state, or transacted business in this state without complying with Sec. 6005, then service of process upon the superintendent was valid. And it will be noted that the *extent* or *volume* of business transacted in this state is not important, as is the case in such cases as Wooster v. Trimont Manufacturing Co., supra. This because of the statute, Sec. 6008. The contract of reinsurance was executed in Indiana, and all the business that defendant transacted in connection with the policies, after the reinsurance contract, was to send by mail to the insured the reinsurance certificates and thereafter to send by mail premium notices to the insured, and received the premiums sent by mail by the insured.

Defendant introduced two affidavits of its secretary in support of the motion to quash. In one of these it appears that defendant had

policies on residents of this state other than Cindrich. In the affidavit it is stated: "Defendant has issued only a few policies to residents of the State of Missouri and in each and all of such instances has done so only by sending application forms to such prospective policyholders by United States mail from the State of Indiana to the State of Missouri, by receiving back completed application forms by United States mail with remittances of the respective premiums, and thereupon filling out and mailing the respective policies directly from its Indianapolis home office to such respective policyholders by United States mail; that defendant has never in any other manner issued any policy to a resident of Missouri." It does not appear how it came about that defendant sent applications to residents of this state.

Summarized, the facts are: (1) The policies sued on were Missouri contracts and issued by an insurer authorized to do business in this state and who had complied with Sec. 6005; (2) defendant is not and never has been authorized to do business in this state and has not therefore complied with Sec. 6005; (3) defendant, in the State of Indiana, entered into a reinsurance contract with the receiver of the American Benefit Life Association, which company issued the policies sued on, by which reinsurance contract defendant reinsured "all of the policies (including the policies sued on) in good standing of said American Benefit LifeAssociation as of midnight, May 31, 1934"; (4) defendant sent to the insured in this state by mail from Indianapolis, Indiana, its certificates of insurance; (5) defendant sent to the insured in this state by mail from Indianapolis notices of premiums; (6) insured, from this state, sent by mail premium payments to defendant in Indianoplis; (7) defendant sent by mail from Indianaoplis blank applications to residents of this state who filled out these applications and by mail returned them to defendant in Indianapolis, and defendant in Indianapolis, accepted them and mailed ▉▉▉ the policies to those whose applications were accepted.

By doing all of the above things did defendant "directly or indirectly issue policies, take risks, or transact business in this state" within the purview of Sec. 6008? Plaintiff contends that the shown activities of defendant as to its insureds in this state is sufficient to constitute transacting business in this state within the purview of Sec. 6008; defendant contends to the contrary.

Among the cases cited and relied upon by defendant are: Minnesota Commercial Men's Association v. Benn, 261 U. S. 140, 43 S. Ct. 293, 67 L. Ed. 573; Oliver v. Iowa State Traveling Men's Assn., 76 Fed. (2d) 963; Baldwin v. Iowa State Traveling Men's Assn., 40 Fed. (2d) 357; Sasnett v. Iowa State Traveling Men's Assn., 90 Fed. (2d) 514; Saunders v. Iowa State Traveling Men's Assn., 222 Iowa 969, 270 N. W. 407; Rausch v. Commercial Travelers' Mut. Acc. Assn., 38 Fed. (2d) 766; Cronin v. Unionaid Life Ins. Co., 184

Ark. 493, 42 S. W. (2d) 758; Selby v. Crown Life Ins. Co. (Mo. App.). 189 S. W. (2d) 135.

In the Benn case [261 U. S. 140], the insurer, a Minnesota company, issued a policy to Benn, a resident of Montana. Upon the death of the insured his executrix brought suit on the policy in Montana; served process on the secretary of state on the theory that such was proper under a statute authorizing such service on a foreign corporation doing business in the state. The facts relied on to show that the Minnesota insurer was doing business in Montana were: (1) A Montana policyholder (Hartness) of the insurer, at the request of the insurer, procured the insured's application on a blank furnished by the insurer; (2) the form was filled in and signed by the insured in Montana and sent by mail to the insurer in Minnesota; (3) the application was accepted and policy mailed to the insured; (4) premium notices were sent by mail to the insured and with these notices blank applications were commonly enclosed; (5) the insured sent in his dues or premiums by mail, and receipts were sent back by mail; (6) the insurer sent blank applications to its Montana members other than Hartness and the insured. Judgment went by default in Montana. Thereafter suit was brought in Minnesota, the domicile of the insurer, on this judgment, and the Montana service was held valid. Benn v. Minnesota Com. Men's Assn., 149 Minn. 497, 182 N. W. 999. But the supreme court of the United States held that the insurer was not doing business in Montana, and that the service on the secretary of state was void. Other federal cases cited and relied upon by defendant are to the same effect as the Benn case, and such is true as to the Arkansas case cited.

In the Selby case, supra, by the St. Louis Court of Appeals, defendant was an Illinois company not authorized to do business in this state, and service was had on the superintendent of insurance, as in the present case, under Sec. 6008. The policy was a family group policy and included, among the insured, Louise Robison. Plaintiff, the beneficiary in the policy, resided at Monticello, Missouri. The defendant, whose home office was in Chicago, put on a commercial broadcast at Carthage, Illinois, advertising its policies. Plaintiff, at Monticello, heard the broadcast; answered on postcard and the result was that the policy was issued May 21, 1942, and mailed to plaintiff at Monticello, and by its terms the policy was an Illinois contract. Louise Robison died June 19, 1942, and proofs were made. The policy provided that if within two years from its effective date any insured died as the result of any act committed in violation of the criminal law, then the defendant would not be liable for an amount greater than the proportionate premiums paid. Defendant claimed that such was the case and denied liability except as to the proportionate premium. Limiting appearance defendant filed plea in abatement claiming that service of process upon the superintendent

of insurance was not authorized under the facts; contended that it had not directly or indirectly issued any policies in this state, or taken any risks in this state or transacted any business in this state. The trial court sustained this plea and the court of appeals affirmed.

In ruling the Selby case the court said [189 S. W. (2d) 1. c. 138] : "It is the settled ▮▮▮ rule that where an insurance company, acting outside the state, accepts the application of a resident of the state which is sent directly to it without the intervention of any one of its agents, and thereupon issues a policy in accordance with the application, such policy is a policy of the state in which it is issued, and the company's issuance of it under such circumstances does not constitute the doing of business in the state in which the insured resides. Minnesota Commercial Men's Assn. v. Benn, supra [261 U. S. 140]; 32 C. J. 996; 29 Am. Jur., Insurance, Sec. 41. This for the reason that where the insured makes the mail his agent for the transmission of his application to the company's home office, then, when the company accepts his application, issues the policy, and deposits the same in the mail as the medium selected by the insured as his agent, the mailing of the policy so as to have put it out of the company's further control is, in legal fiction, to be regarded as the delivery of the policy to the insured himself, who is to be deemed to have invited the company to adopt that means for communicating its acceptance of his application", citing Limbaugh v. Monarch Life Insurance Co. (Mo. App.), 84 S. W. (2d) 208, 212; Edwards v. Business Men's Acc. Assn. of America, 205 Mo. App. 102, 221 S. W. 422.

All the cases cited and all consulted from our own research on the question of whether defendant, under the facts, directly or indirectly transacted business in this state are contrary to such contention, unless it be Storey v. United Ins. Co., 64 Fed. Supp. 896. That case was by the federal district court in South Carolina. The question was on a motion to quash service of process upon the commissioner of insurance, and the court sustained such service. The facts were: The insurer's domicile was Chicago, Illinois, and it was not authorized to do business in South Carolina. The insured and the plaintiff beneficiary were residents of South Carolina. The insurer solicited insurance contracts by advertisements in publications having a national circulation, including Grier's Almanac. The plaintiff, at Leesville, South Carolina, answered the advertisement in the almanac. In response to the inquiry the insurer, through its agency at Elgin, Illinois, sent by mail a blank application to plaintiff beneficiary. The application was completed for a $5,000 policy on the insured, James Ira Storey, and returned by mail to the insurer's Elgin, Illinois agency. The policy was issued April 16, 1945, and sent by mail to the insured, and received and accepted by him at Leesville, South Carolina.

A South Carolina statute provided: "The transacting of business in this state by a foreign or alien insurer without being authorized to do business in this state and the issuance or delivery by such foreign or alien insurer of a policy or contract of insurance to a citizen of this state or to a resident thereof, or to a corporation authorized to do business therein, is equivalent to an appointment by such insurer of the Commissioner of Insurance and his successor or successors in office, to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding arising out of such policy or contract of insurance, and the said issuance or delivery is a signification of its agreement that any such service of process is of the same legal force and validity as personal service of process in this state upon it."

In ruling the Storey case the court said [64 Fed. Supp., l. c. 899]: "From the foregoing (facts) it may be stated that the application for insurance originated in South Carolina; that the policy, while presumably executed in Illinois on the part of the insured, was not to become effective until it was accepted by the insured, a citizen and resident of South Carolina, in South Carolina; that it was in contemplation of the parties that the insurance should obtain in South Carolina as a protection to the insured therein; that the obligation of the insurer to pay in case of loss was an obligation to pay in South Carolina at the residence of the insured or of his beneficiary as the case might be; and that the insurer had certain rights under the policy for its protection against unfounded claims which could be exercised only in South Carolina, such as the examination of the person of the insured, or the holding of an autopsy in case of the death of the insured. Futhermore the policy contemplated that South Carolina law would govern the holding of autopsies and certain time limitations stated in the policy."

It will be noted that the South Carolina statute says that the issuance or *delivery* of a policy by an alien insurer *to* a citizen of South Carolina is equivalent to the appointment of the commissioner of insurance, etc. That is much broader than our statute, Sec. 6005. However, that particular provision of the South Carolina statute was not stressed in the Storey case opinion. In view of the ruling in the Benn case by the supreme court of the United States by which we are bound on a question of due process, and other federal rulings in the cases above mentioned, we are constrained to rule that the facts in the present case do not support the contention that defendant transacted business in this state within the purview of Sec. 6008. The fact that the policy sued on is a Missouri contract and issued by an insurer who had complied with Sec. 6005 could not operate to make defendant amenable to process served upon the superintendent of insurance on the theory that defendant transacted business in this state.

1072

Plaintiff cites Woelfle v. Connecticut Mut. Life Ins. Co., 234 Mo. App. 135, 112 S. W. (2d) 865, and quotes therefrom as follows [112 S. W. (2d) l. c. 868]: "The test of the plaintiff's right in any case to have service upon the superintendent of the insurance department is whether the policy or liability sued on is 'outstanding in this state.'" Plaintiff's policy was *outstanding* in this state in that it insured a citizen of this state, but that fact could not operate to support a ruling that defendant transacted business in this state. Plaintiff points out that by the certificates of reinsurance defendant assumed "the obligations which said American Benefit Life Association would have been required to fulfill to the said insured" under the policies, and plaintiff says that the obligations assumed included the *consent* of the original insurer for service of process upon the superintendent of insurance of this state. If such be so such obligation was assumed *in* the State of Indiana and able counsel does not suggest how such act of assumption in Indiana could operate to constitute the transacting of business in this state. It appears in the record that our insurance department was not advised that defendant had reinsured the policies sued on, and it also appears that our insurance department was of the opinion that service upon the superintendent in a suit on the present policies would be valid. And we might say that it is regrettable that such cannot be the ruling in this case because, absent entry of appearance, plaintiff must go to the domicile of defendant to sue on these policies, a hardship not contemplated at the time the policies were issued.

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.