Chester H. LAUCK (AKA LUM) and Norris Goff (AKA ABNER) as Individuals and Partners, Plaintiffs,

v.

E. C. K. CHIVERS & ASSOCIATES, Lums, Inc., dba "Lums", and Centaur Enterprises, Inc., dba "Lums", Defendants.

No. PB 69–C–47.

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

Dec. 4, 1970.

Emerson & Radney, Washington, D. C., Robert M. Fargarson, Memphis, Tenn., M. J. Probst, Bridges, Young, Matthews & Davis, Pine Bluff, Ark., for plaintiffs.

John G. Lile, Coleman, Gantt, Ramsay & Cox, Pine Bluff, Ark., for E. C. K. Chivers & Associates.

George Pike, Jr., Smith, Williams, Friday & Bowen, Little Rock, Ark., for Lums, Inc.

Owen C. Pearce, Pearce, Robinson, McCord & Stewart, Fort Smith, Ark., for Centaur Enterprises, Inc.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

The defendants, E. C. K. Chivers & Associates, Lums, Inc., dba "Lums", and Centaur Enterprises, Inc., dba "Lums", have filed separate motions to quash service of summons and to dismiss the complaint on the ground that the court is without personal jurisdiction. The threshold question presented by the motions is the construction and application of the Arkansas statute referred to as the Uniform Interstate and International Procedure Act adopted by the General Assembly of Arkansas, Act 101 of 1963, Ark.Stat.Ann. Secs. 27–2501–2507 (1963 Supp.), and particularly with reference to Section 27–2502, which provides that the courts of this state may exercise jurisdiction of out-of-state corporations engaging in business activity or conduct within the state.

The motions are submitted on the record in the case as of this time, including affidavits, exhibits and memorandum briefs. Although there is close corporate relation between the defendants, each has its separate attorneys on the instant questions involving in personam jurisdiction.

This is a diversity case and there is no question as to federal jurisdiction.[1] The plaintiff, Chester H. Lauck, is a resident and citizen of Arkansas, and the plaintiff, Norris Goff, is a resident and citizen of California. The plaintiffs are also a partnership with principal place of business in the State of Arkansas. The defendant, E. C. K. Chivers & Associates, is a foreign corporation organized and existing by virtue of the laws of Florida, with its principal place of business in Miami, Florida. The defendant, Lums, Inc., is a foreign corporation organized and existing under the laws of the State of Florida, with its principal place of business in Miami, Florida. The defendant, Centaur Enterprises, Inc., is a foreign corporation alleged to exist under the laws of New Jersey, with its principal place of business in that state. In view of the sum of the plaintiffs' demand, the amount in controversy is without question in excess of $10,000, exclusive of interest and costs.

The thrust of the issue of in personam jurisdiction in this matter centers around the motion of the defendant, Lums, Inc. The motion of Lums, Inc., is supported by affidavit. Neither motion of E. C. K. Chivers & Associates or Centaur Enterprises, Inc., is supported by affidavit.

The basis of the plaintiffs' complaint is that the defendants, and particularly defendants, Lums, Inc., and E. C. K. Chivers & Associates, have used and are using the plaintiffs' names individually and in partnership without the plaintiffs' approval, agreement or consent and without consideration or payment of compensation to them by the defendants.

From the record, Lums, Inc., is the parent corporation with E. C. K. Chivers & Associates, Centaur Enterprises, Inc., and other corporations as wholly owned subsidiary corporations through whom Lums, Inc., is engaged in numerous and various activities in a number of the states of the United States, including Arkansas. Lums, Inc., is engaged in the sale of foods, soft drinks and intoxicating beverages. The corporation also engages in the marketing and selling of franchises for such food and beverages. Lums, Inc., owns the patent rights and trade names

---

1. 28 U.S.C. § 1332.

of such products as "Lums", "Lumdogs", "Lumbergers" and various other foods to be supplied under franchises for outlets of subsidiary operations in accordance with the franchise agreements.

E. C. K. Chivers & Associates, Inc., one of the wholly owned subsidiaries of Lums, Inc., is the exclusive franchise agent for Lums, Inc., and as such, engages in advertising and other methods of promoting Lums or Abners and of the issuance of franchise agreements for the various and sundry products of Lums, Inc. As a result of advertising and other contacts by E. C. K. Chivers & Associates, Inc., as the exclusive franchise agent for Lums, Inc., several businesses have been established in Arkansas and given a franchise as an outlet of various products of Lums, Inc., through wholly owned corporate subsidiaries or subsidiaries owned by corporation subsidiary of Lums, Inc. Such outlets were established at Fayetteville, Fort Smith and Pine Bluff, Arkansas, and efforts to establish others, including Little Rock, were made by the subsidiary corporations.

In addition to outlets for the products of Lums, Inc., the subsidiary corporations would furnish designs, supervise advertising, provide training of personnel, supervise operation by inspection, etc. In addition, franchise agreements would be made for the establishment and operation of "Lums" stores in connection with the food outlets as hereinabove described.

Although the parent corporation, Lums, Inc., the exclusive franchise agent, E. C. K. Chivers & Associates, Inc., and other subsidiary corporations maintained separate offices, separate records and generally different officers and board members, each of the subsidiary corporations stems from the parent corporation, Lum's, Inc. Some of the personnel who participate and assist in the organization of the operating corporations from the franchise outlets in the various states were and are officers or otherwise associated with the parent corporation, Lum's, Inc., with the same

address or within the vicinity of the address of Lum's, Inc.

With the motion to dismiss as against defendant, Lum's, Inc., affidavit of Jay Leshaw, Vice President of Lum's, Inc., was filed in support of the motion. In his affidavit Mr. Leshaw stated, inter alia, that Lum's, Inc., was a Florida corporation with its principal office maintained at 5050 Biscayne Boulevard, Miami, Florida. This is the address given by him in answer to interrogatories in which he admitted that he negotiated and signed the leases for property purchased in Arkansas as the location of the franchized restaurants along with other officers and personnel of Lum's, Inc., in Florida. In his affidavit Mr. Leshaw further stated that the defendant, Lum's, Inc., is the sole stockholder of Lum's Restaurant Corp., a Delaware corporation, which owns the stock of other corporations, which corporations operate or franchise others to operate a chain of specialty restaurants operated under the tradename "Lum's".

Defendant, Lum's, Inc., engages in no business directly in Arkansas. Neither does it have an office or personnel directly employed in the state. It does not maintain a telephone listing or bank account. It has no mailing address within the state or directly owns any real or personal property located in the State of Arkansas. It has paid no taxes to the State of Arkansas, or been licensed or qualified to do business in the State of Arkansas. It has no authorized agent for service of process and contends that it has never solicited business in the State of Arkansas. It does not now or has it ever maintained or operated any restaurant or other business in Arkansas.

As stated in Mr. Leshaw's affidavit, each of the restaurants situated in the State of Arkansas is owned by a subsidiary corporation of Lum's, Inc., including the premises under lease or owned by it and which operates as a franchise. The franchisee is granted a license by the subsidiary for the term of the lease applying to the restaurant to use the name "Lum's", "Lumberger",

and "Lumdog" service marks and names in the restaurants constructed by or on behalf of the franchisee.

The primary question is whether or not there are sufficient contracts as alleged in the complaint of the plaintiff to bring the defendant, Lum's, Inc., within the ambit of Ark.Stats. § 27–2502. In an effort to extend in personam jurisdiction over non-resident corporations as far as the United States Constitution will permit the General Assembly of Arkansas provided § 27–2502 Ark.Stats. as relevant herein, as follows:

"C. Personal jurisdiction based upon conduct.

1. A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to (cause of action) (claim for relief) arising from the person's

(a) transacting any business in this State;

(b) contracting to supply services or things in this State;

(c) causing tortious injury by an act or omission in this State;

(d) causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engaged in any other persistent course of conduct in this State or derives substantial revenue from goods consumed or services used in this State;

(e) having an interest in, using, or possessing real property in this State, * * * "

The plaintiff contends that in personam jurisdiction over Lum's, Inc., may be exercised by reason of its or its agents' activity consistent with these provisions of the statute and that personal jurisdiction of E. C. K. Chivers may be exercised by reason of its activity consistent with the provision of the statute.

With its contention, the plaintiff relies on (1) Lum's Franchise Agreement; (2) national advertisement; (3) answers to the interrogatories; (4) ad-

missions of fact; (5) discovery depositions; and (6) exclusive franchise agreement between Lum's, Inc., and E. C. K. Chivers, its subsidiary. It is admitted and well-established law that mere stock ownership in a subsidiary is not sufficient to subject a parent corporation to in personam jurisdiction. It is necessary for the parent corporation to have sufficient contacts if it is not present within the state and the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

The rule was explicitly stated in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), when the United States Supreme Court, with Mr. Justice Black speaking for the court, stated:

"Since Pennoyer v. Neff, 95 U.S. 714, [24 L.Ed. 565,] this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. [State of] Washington, 326 U.S. 310, [66 S.Ct. 154, 90 L.Ed. 95,] the Court decided that 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' Id., 326 U.S. at page 316, 66 S.Ct. at page 158.

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

Even prior to the McGee case, supra, the United States Supreme Court laid down the rule applicable to in personam jurisdiction in International Shoe Company v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, as follows:

"The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. St. Louis S. W. R. Co. v. Alexander, supra, 227 U.S. 228, 33 S.Ct. 248, 57 L.Ed. 486; International Harvester Co. v. Kentucky, supra, 234 U.S. 587, 34 S.Ct. 946, 58 L.Ed. 1479. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff, supra; Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. Compare International Harvester Co. v. Kentucky, supra, with Green v. Chicago, Burlington & Quincy R. Co., supra [205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916,], and People's Tobacco Co. v. American Tobacco Co., supra [246 U.S. 87, 38 S.Ct. 235, 62 L.Ed. 587]. Compare Connecticut Mutual Life Ins. Co. v. Spratley, supra, 172 U.S. 619, 620, 19 S.Ct. 314, 315, 43 L.Ed. 569, and Commercial Mutual Accident Co. v. Davis, supra [213 U.S. 254, 29 S.Ct. 447, 53 L.Ed. 782], with Old Wayne Mut. Life Ass'n v. McDonough, supra, [204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345]. See 29 Columbia Law Review, 187–195."

Applying the standards to the instant case, it cannot be said that the defendant, Lum's, Inc., does not have minimum contacts through its wholly owned subsidiaries from which it receives direct benefits to bring the defendant within the ambit of Ark.Stats. § 27–2502. To hold that a corporation such as the defendant, Lum's, Inc., can isolate itself in a particular state and with deliberation and intention organize numerous and subsidiary corporate subsidiaries who operate together and in conjunction with each other's activities and with the same officers, personnel and place of business residence would provide a flagrant disregard of the rules of fairness and justice.

In its national advertisement, the defendant, E. C. K. Chivers & Associates, Inc., advertising for franchises of "Lum's" or "Abner's" state that it is the exclusive franchise sale agent and gives its address as Buena Vista Station, Mi-

ami, Florida. In the Lum's Franchise Agreement between the operator of a restaurant and the exclusive agent, E. C. K. Chivers & Associates, Inc., a wholly-owned subsidiary of Lum's, Inc., it is stated that Lum's, Inc., a Florida corporation, a/k/a Lums is the originator and creator of a restaurant and bar system known as "Lums System." In the Franchise Agreement Lum's is noted as an interested party in numerous and sundry provisions having to do with the franchise, the product to be used, the service to be rendered and the benefits to be realized. It is signed by Franchisee George J. Buff, III, Haddonfield, N. J., the place of business of the defendant Lum's wholly-owned subsidiary engaging in the establishment of the local outlets of Lum's restaurants. It is also signed by E. C. K. Chivers & Associates, Inc., as exclusive franchise agent for Lum's, Inc., and the franchisor, a local corporation owned by the subsidiary New Jersey corporation and by a vice president who is an officer in Lum's, Inc., with his address at the Florida, Biscayne Boulevard, address of the defendant corporation. It is also attested by an assistant secretary of the local operating corporation who is assistant vice president and assistant secretary of Lum's, Inc., with an address at the corporation's Biscayne Boulevard address in Miami, Florida.

The record clearly establishes that Lum's, Inc., not only has stock in the subsidiary corporations, but generally owns, controls and directs the operation of the subsidiary corporations for its own outlets and franchises in the operation of its business, products and services.

Our own Eighth Circuit Court of Appeals has more recently applied the rule of "traditional notions of fair play and substantial justice" in Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365 (8 Cir. 1969). At page 368, Judge Heaney, speaking for the Court, said:

"In Aftanase, supra, [Aftanase v. Economy Baler Company, 343 F.2d 187

(8th Cir. 1965)] we outlined five factors to be considered in determining whether the fair play and substantial justice requirements were satisfied: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a form for its residents; and (5) the convenience to the parties."

A consideration of these factors here convinces this Court that the exercise of jurisdiction in this case is consistent with constitutional requirements.

Again the Eighth Circuit restated the rue applicable in Thompson v. Ecological Science Corporation, 421 F.2d 467 (8 Cir. 1970) relying on International Shoe Company, supra, and McGee, supra, as a basis for its decision and referring to the Aftanase case, supra, and the five factors in the Electro-Craft Corp. case, supra. In Thompson it was undisputed that during the negotiations the agents of Ecological was physically present in Arkansas. In the instant case E. C. K. Chivers Associates, Inc., as the agent of Lum's, Inc., for its franchise, as well as other subsidiary corporations, were physically present in Arkansas for the specific purposes of inducing residents and others to establish outlets for the business, product and service of the defendant, Lum's, Inc.

As in the Thompson case, supra, the court is of the opinion that under the totality of circumstances the requirements of due process have been satisfied even though jurisdiction is based upon minimal activities by the defendant, Lum's, Inc., in the forum state.

See Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2 Cir. 1967); National Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472 (7 Cir. 1959); Bluff Creek Oil Co. v. Green, 257 F.2d 83 (5 Cir. 1958); 18 Fletcher, Cycl. Corporations § 8722 at 319 (1969).

Also see Davis v. Triumph Corporation, 258 F.Supp. 418 (D.C.1966); Scalise v. Beech Aircraft Corp., 276 F.

Supp. 58, 65 (D.C.1967); Waukesha Building Corporation v. Jameson, 246 F. Supp. 183 (D.C.1965); Pennsalt Chemical Corporation v. Crown Cork & Seal Co., 244 Ark. 638, 426 S.W.2d 417 (1968), where the Supreme Court of Arkansas adopted a similar rule of a persistent course of conduct within the State of Arkansas by nonresident corporation through its own agent or an independent manufacturer's agent to constitute the minimum contacts necessary to give a state jurisdiction without offending the traditional notions of fair play and substantial justice.

In accordance with the views and opinions expressed hereinabove, the motion of the defendant, Lum's, Inc., to dismiss this action against it will be denied and an order will be entered accordingly.

The defendant, Lum's, Inc., also requests that the return of summons be quashed. Neither party argues this question. It appears from the record that the provision of the statute has been met and in compliance therewith sufficient notice given to the defendant for proper response. The motion to quash will be denied and an order will be entered accordingly.